466 Pa. 81 (1976)
351 A.2d 631
Louis FRUMENTO, Appellant,
v.
UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee, and Dominick Staffieri, Inc., Intervening Appellee.
Supreme Court of Pennsylvania.
Argued January 17, 1975.
Decided January 29, 1976.
*82 Marvin F. Galfand, Philadelphia, for appellant.
John C. Wright, Jr., Peter Broida, Philadelphia, for appellee, Dominick Staffieri, Inc.
Sydney Reuben, Harrisburg, for appellee, Unemployment Comp. Bd. of Rev.
Before JONES, C.J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT
NIX, Justice.
This appeal arises under the Unemployment Compensation Law, Act of December 5, 1936, P.L. [1937] 2897, *83 as amended, 43 P.S. § 751 et seq. The specific question is whether appellant-employee was properly excluded from benefits under this Act because of a termination of employment as a result of "willful misconduct" in accordance with section 402(e), 43 P.S. § 802(e).
Appellant's application for unemployment compensation benefits was denied by the Bureau of Employment Security premised upon a determination that his discharge was as a result of willful misconduct. This determination was reversed by a referee who was in turn reversed by the Unemployment Compensation Board. The Commonwealth Court affirmed the action of the Board and this Court granted allocatur.
There is no serious dispute as to the events which resulted in the discharge. Appellant Louis Frumento had been employed by Dominick Staffieri, Inc. as a compressor truck driver for approximately three years. In January of 1972, Frumento advised his employer that he had been elected judge of election and that it would be necessary for him to miss work on primary and general election days. The employer then told Frumento that permission for missing work on these two days would depend on the volume of work at the time. On April 24, 1972, Frumento advised his employer that he would miss work the next day, which was primary election day. His employer refused to give Frumento the day off and warned him that he would be discharged if he did not come to work. Frumento did not report for work and was discharged.
The dispute arises because the statute does not define the term "willful misconduct." The Superior Court has had an occasion to define this concept as:
"`Willful misconduct' . . . has been held to comprehend an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, *84 or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer." Moyer Unemployment Compensation Case, 177 Pa.Super. 72, 74, 110 A.2d 753, 754 (1955).
See also Davis v. Unemployment Compensation Board of Review, 187 Pa.Super. 116, 117, 144 A.2d 452, 454 (1958).
While all parties to this action expressed their agreement with the language of the Superior Court quoted above, each side attempts to construe the meaning in accordance with their understanding of the philosophy of the Act. For instance, intervening-appellee, Staffieri, argues "it matters not to the employer whether the employee has a good reason." The employer would urge that we extend the term "willful misconduct" to embrace every deliberate absence contrary to the expressed instructions of an employer which has not been "truly involuntary". In citing an example of a situation that could properly be considered as "truly involuntary", the employer suggests one where an employee's absence is as a result of compliance with a legal subpoena. Here appellant asserted that his absence was compelled by the provision of the Election Code[1] which makes the willful failure of a judge of election to fulfill his responsibilities a misdemeanor. The employer adopts the argument of the Commonwealth Court rejecting this contention because *85 Frumento voluntarily assumed this responsibility.[2] We reject the reasoning of the employer and the Commonwealth Court as being too restrictive to carry out the clear legislative intention of this section of the Unemployment Compensation Act.
Paramount in our analysis is the realization that this act was intended to be remedial and, thus, should be liberally construed to achieve its express purposes.
"In attempting to arrive at a definition for this term, it is helpful to be mindful of the guiding principle announced by this Court in Wedner v. Unemployment Compensation Board of Review, 449 Pa. 460, 467, 296 A.2d 792, 796 (1972):
"`Finally, it is to be remembered that the Unemployment Compensation Law is a remedial statute, and, excepting the sections imposing taxes, its provisions must be liberally and broadly construed so that its objectives [insuring that employees who become unemployed through no fault of their own are provided with some semblance of economic security] may be completely achieved.' Blum Unemployment Compensation Case, 163 Pa.Super. 271, 278, 60 A.2d 568, 571 (1948)."
Lattanzio v. Unemployment Compensation Board of Review, 461 Pa. 392, 336 A.2d 595, 598 (1975). See also *86 Lybarger Unemployment Compensation Case, 418 Pa. 471, 211 A.2d 463 (1965).
Equally germane to the inquiry is a recognition that the issue is not whether the employer had the right to discharge for the questioned conduct of the employee,[3] but rather whether the State is justified in reinforcing that decision by denying benefits under this Act for the complained of conduct.[4]
The legislative intention could not be achieved if we were to accept a view that would fail to look beyond the fact that an employee in a single instance had acted in a manner contrary to the express direction of the employer. This much is conceded by the employer herein. However, we must reject their test of "truly involuntary", particularly as it is sought to be applied here, as too circumscribed. As suggested by the definition developed *87 by the Superior Court in order to fall within the definition of "wilful misconduct" the actions must represent "a disregard of standards of behavior which the employer has a right to expect of an employe[e]." Moyer v. Unemployment Compensation Board of Review, supra. Thus, not only must we look to the employee's reason for non-compliance we must also evaluate the reasonableness of the request in light of all of the circumstances. To accommodate this end the Superior Court developed a concept of good cause. Crib Diaper Service v. Unemployment Compensation Board of Review, 174 Pa.Super. 71, 98 A.2d 470 (1953), see also Krawczyk Unemployment Compensation Board of Review, 175 Pa.Super. 361, 104 A.2d 171 (1954). The rationale upon which this concept of good cause was developed was that where the action of the employee is justifiable or reasonable under the circumstances it can not be considered wilful misconduct since it can not properly be charged as a wilful disregard of the employer's intents or rules or the standard of conduct the employer has a right to expect. Crib Diaper Service v. Unemployment Compensation Board of Review, supra. We find this reasoning persuasive.
Applying this concept of good cause to the instant facts, we are satisfied that the Commonwealth Court and Board erred in denying benefits to this appellant. If the nature of the employee's undertaking (judge of election) was inimical to the employer's interest, he was provided ample opportunity to request that Frumento relinquish this responsibility. Having waited until the day before the primary election, when the question was again raised by the employee, to issue the directive in question appears to have been an unreasonable approach. Further, the employer first conditioned his approval of the absence upon whether the work load would allow the loss of the employee's services for the day. The refusal, however, was predicated upon the absence of other employees *88 and not an increase in the volume of the normal work load.[5]
We have carefully reviewed the authorities offered by intervening appellee and find them inapplicable. In Burke v. Unemployment Compensation Board of Review, 199 Pa.Super. 565, 186 A.2d 425, although a denial of benefits was upheld for claimant's refusal to work during the Christmas holidays, the court took great care to point out that the employer had fairly attempted to equalize days off between his employees and the employee failed to offer any explanation for the decision not to appear on the days assigned. See Davis v. Unemployment Compensation Board of Review, 187 Pa.Super. 116, 144 A.2d 452 (1958). In Morgan v. Unemployment Compensation Board of Review, 176 Pa.Super. 297, 106 A.2d 618 (1954) the conduct of claimant was an arbitrary and flagrant disregard of the employer's interest, and clearly inapposite to the instant factual situation. However, the court in that decision recognized that "a single instance of misconduct is usually not such as to bring an employe[e] within the purview of § 402(e)." Lastly, the employer offers Butchko v. Unemployment Compensation Board of Review, 168 Pa.Super. 618, 82 A.2d 282 (1951) where the appeal was dismissed because claimant failed to file a brief or appear for argument.
The order of the Commonwealth Court is reversed and the matter is remanded to the Unemployment Compensation Board of Review for further proceedings consistent herewith.
NOTES
[1] The Election Code, Act of June 3, 1937, P.L. 1333, art. XVIII, § 1848, 25 P.S. § 3548 provides:

"Any Secretary of the Commonwealth, member of a county board of elections, chief clerk, employe, overseer, judge of election, inspector of election, clerk of election, machine inspector or custodian of voting machines on whom a duty is laid by this act who shall wilfully neglect or refuse to perform his duty, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding one thousand ($1,000.00) dollars, or to undergo an imprisonment of not more than two (2) years, or both, in the discretion of the court. (Emphasis supplied.)
[2] We find it difficult to follow the logic of this reasoning under the employer's "truly voluntary" theory. If the gist of the alleged misbehavior on the part of the employee was his acceptance of the responsibility without the prior approval of the employer, then the issue would be whether that conduct fell within the concept of "wilful misconduct". However, he was not here discharged for the acceptance of the office without prior approval of the employer. Most significantly, when apprised of the fact of Frumento's election to this office, the employer did not either order or suggest that he consider resigning. Having once undertaken the responsibilities of an election official he was subject to the same obligation as all others in his category by virtue of § 3548 regardless of the circumstances under which he assumed office. The degree of compulsion mandated by § 3548 upon one subject to its provisions is in no way alleviated because of a voluntary assumption of this responsibility.
[3] There is some authority in this jurisdiction suggesting that an employee hired at will may be dismissed without cause. Cf. Henry v. Pittsburgh & Lake Erie Railroad Co., 139 Pa. 289, 21 A.2d 157 (1891).
[4] The policy sought to be achieved by this legislation is set forth as follows:

"Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employees during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." Unemployment Compensation Law, Act of December 5, 1936, supra, at 43 P.S. § 752.
[5] The record failed to offer any explanation for the absence of the other employees or whether any action was taken against them. Cf. Woodson v. Unemployment Compensation Board of Review, 461 Pa. 439, 336 A.2d 867 (1975).