Max M. Russell, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 8, 1978, before Judges CRUMLISH, JR., BLATT and DiSALLE, sitting as a panel of three.

*Jeffrey A. Ernico*, for appellant.

*Charles G. Hasson*, Assistant Attorney General, with him *Sydney Reuben*, Assistant Attorney General, and *Robert P. Kane*, Attorney General, for appellee.

OPINION BY JUDGE DiSALLE, July 11, 1978:

Max M. Russell, Jr., (Russell) filed this petition for review of an order of the Unemployment Compensation Board of Review (Board) dated January 26, 1977. The order affirmed a referee's determination that Russell had been properly discharged under Section 402(e) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e), for wilful

misconduct and was therefore ineligible to receive unemployment benefits.  We affirm.

Russell was employed by the Bureau of Employment Security (Bureau) in Harrisburg, Pennsylvania. For the three months immediately preceding his discharge, he worked in the position of intermittent intake interviewer in the Harrisburg local office.  Previous to this, Russell had worked for fourteen months in the Bureau's Interstate Claims office.  During the period spent in the Interstate Claims office, Russell had been warned verbally and in writing on numerous occasions about insubordination and his failing to adhere to the directives of his superiors.  He had also received a three day disciplinary suspension.  He was transferred from the Interstate Claims office to the Harrisburg local office in lieu of dismissal for his failure to heed these warnings.  Following his transfer to the position of intermittent intake interviewer, Russell persisted in ignoring superiors' directives and, after several warnings, was discharged on June 4, 1976.

Russell filed an application for benefits on June 6, 1976.  The Bureau of Employment Security denied his claim under Section 402(e) and he appealed.  After conducting a hearing on the claim, during which extensive testimony was given, the referee affirmed the Bureau's determination.  Upon appeal to the Board the referee's decision was affirmed and Russell thereafter filed the petition for review now before us.

Russell advances two arguments on appeal: (1) the record fails to contain substantial evidence to support a finding that he was guilty of wilful misconduct; and (2) he was improperly held to a higher standard of conduct than that of the Bureau's other employes.

The record shows that after Russell was transferred from his position in the Interstate Claims of-

fice he received numerous warnings about his conduct. Specifically, one supervisor stated before the referee that Russell used the telephone on numerous occasions for personal calls. Russell had been told repeatedly that this was prohibited. The supervisor also testified that Russell took too much time with claimants on the telephone, because he persisted in attempting to counsel them even though he well realized that this was not one of his duties. Finally, the supervisor indicated that on another occasion Russell brought a claimant's form to her and indicated that he had seen the claimant's name in the obituaries. The supervisor told him that he should post the information as he did on any other claim and that it was not his job to verify such information. Despite this unequivocal instruction, Russell immediately called the Bureau of Vital Statistics and the Harrisburg School District in an attempt to verify the information. Thereafter Russell was transferred to another supervisor within the local office.

Russell's conduct did not improve with this transfer. The testimony of his subsequent supervisor demonstrates that Russell persisted in ignoring the most reasonable and direct instructions. He stated that Russell's responsibility was typing information from a control card. This information consisted solely of the claimant's name, address, and social security number. He was then to date this information, stamp it with the local office stamp and sign it. When asked by his supervisor why he was taking so long to perform this task, Russell indicated that he was cross referencing the names on the cards with the names listed in the public telephone book. When informed of this, the supervisor told Russell to discontinue this practice. He informed him that this indexing was done by someone else using social security numbers. Despite this resquest, Russell persisted in checking

the names with those listed in the phone book. More-over, if a name on a control card coincided with one in the telephone book and had a different address than that on the control card, Russell would change the address on the card. This resulted in notices from the Bureau being sent to the wrong parties on numerous occasions. The supervisor also stated that Russell did not stamp the information prior to its being sent, even though the information had been returned to him specifically for that reason.

When conflicting testimony exists in the record, questions of credibility and the weight to be given evidence are for the Board. *Schafer v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 200, 378 A.2d 1044 (1977). We have held that an employe's repeated direct refusals to perform a duty assigned or follow an instruction given by an employer falls within the definition of wilful misconduct. *See Unemployment Compensation Board of Review v. Homsher*, 21 Pa. Commonwealth Ct. 576, 347 A.2d 340 (1975). Russell does not argue that the supervisors' specific instructions were in any way unreasonable. Under such circumstances Russell was not entitled to substitute his own judgment for that of his superiors. *See Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976). We conclude that substantial evidence exists in the record to support a determination that Russell's conduct amounted to wilful misconduct.

Russell's second contention, that he was held to a higher standard of conduct than his fellow employes, is baseless. Russell argues that Mr. Zalesky, Director of the Harrisburg Office, testified that the "regular procedure" for disciplinary action is to give several verbal warnings and then a supervisory written warning. If the problem continues the employe is suspended and then dismissed. Russell argues that upon be-

504

ing transferred to the local office he was told he would start with a "clean slate." Based on this, he contends that he should have been given the "normal" warnings and a second suspension prior to being discharged. If nothing else, the record shows that Russell received more than favorable treatment. He was warned on innumerable occasions to follow the directions of his supervisors. Moreover, he was given a "second chance" to remedy his conduct before being terminated. He persisted, however, in ignoring the most reasonable and simple directions. We affirm.

ORDER

AND Now, this 11th day of July, 1978, the Order of the Unemployment Compensation Board of Review at Decision No. B-140197, denying unemployment compensation benefits to Max M. Russell, Jr., is hereby affirmed.