**Louis SUBASHI, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 6, 1998.
Decided June 1, 1998.

Lynne L. Wilson, Harrisburg, for petitioner.

Leo A. Hackett, Media, for intervenor, Chester Upland School District.

Before COLINS, President Judge, KELLEY, J., and McCLOSKEY, Senior Judge.

KELLEY, Judge.

Louis Subashi (claimant) petitions for review of an order of the Unemployment Compensation Board of Review. The board's order reversed the referee's decision granting claimant unemployment compensation benefits pursuant to section 402(e) of the Pennsylvania Unemployment Compensation Law (Law).[1] We affirm.

The Chester Upland School District (school district) employed claimant from September 1971 until his suspension on December 11, 1996. Claimant filed an application for unemployment compensation benefits with the Delaware County Job Center (job center) on February 10, 1997. The job center issued a notice of determination on February 27, 1997 denying claimant unemployment benefits under section 402(e) of the Law. Specifically, the job center determined that claimant had been discharged for willful misconduct based on his violation of the school district's code of discipline.

Claimant appealed the determination of the job center to a referee who held a hearing on March 21, 1997. The referee found that no competent evidence had been submitted by the school district which indicated that claimant violated any of the school district's rules or regulations or that claimant engaged in any type of misconduct. Accordingly, the referee reversed the job center's determination and awarded claimant unemployment compensation benefits from December 28, 1996 through February 27, 1997.

The school district then filed an appeal from the referee's decision to the board alleging that the referee had agreed to accept the testimony which had been secured at prior administrative hearings concerning claimant's situation. Consequently, the school district requested that the proceedings be remanded to the referee so that witnesses could testify in light of the referee's refusal to accept the transcripts of testimony from the administrative hearings related to the matter. The board issued an order

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Act states that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

dated June 12, 1997, which remanded the matter to the referee for another hearing and directed the referee to serve as the board's hearing officer. The referee held a hearing on June 30, 1997 in which he accepted the transcripts of the administrative proceedings and secured further testimony from the parties and their witnesses.

Based on the testimony secured by the referee, acting as the board's hearing officer, the board made the following pertinent findings of fact:

2. Employer rules prohibit corporal punishment of students.

3. Claimant was aware of this employer rule.

4. On December 5, 1996, the claimant accompanied his class on a field trip.

5. On the return trip, on the bus, an incident occurred with two students wherein a bag of chips was tossed around.

6. After the bag was tossed around and hit a teacher's head, [it] ended up on the floor of the bus.

7. Claimant entered the bus and asked a student if the chips belonged to him.

8. The student answered "yes", that the chips belonged to him although he did not throw them on the floor.

9. The claimant then smashed the chips into the student's chest, lifted up the student's shirt and smashed them again into the student's chest.

10. The bag of chips, then opened and spilled onto the floor.

11. A student teacher cleaned up the mess and took the student to the back of the bus.

12. Another incident occurred shortly after the above incident. The girls in the back of the bus were making noises.

13. The claimant came to the back of the bus in order to quiet them and told the above-referenced student, who had been standing, to sit down.

14. The student stuck his hand in front of the claimant's face. The student's hand never touched the claimant.

15. The claimant began to yell at the student and then spit on the student's hand and the student then wiped it on claimant's shirt.

16. The claimant then struck the student and hit the student on his left jaw.

17. The student, during this incident, became very upset and began to yell and swear at the claimant.

18. The bus returned to the school and the incident was reported to the vice-principal.

19. Claimant admitted to the vice-principal that he punched the student in the jaw and pushed the chips into the student's chest. Claimant said, "he lost it" and was very apologetic.

20. The claimant was placed on leave without pay effective December 12, 1996, while the employer investigated the above-noted incidents against claimant.

21. After the investigation and numerous hearings regarding the incident, the claimant was discharged effective April 24, 1997.

22. Claimant did not have good cause for his actions in striking a student.

In concluding that claimant had engaged in willful misconduct, the board stated that claimant had chosen to strike the student in violation of the school district's known policy.[2] Additionally, the board noted that other measures could have been taken by claimant to bring the incident to an end. This appeal followed.[3]

---

**2.** The school district submitted its code of discipline into evidence at the remand hearing. Reproduced Record (R.) at 179a. The code of discipline states that corporal punishment is prohibited as a form of discipline in the school district. R. at 46a. Corporal punishment is defined as the physical touching or striking of a student by any means for the purpose of punishing or disciplining the student. *Id.*

**3.** In unemployment cases, our scope of review is to determine whether constitutional rights were violated, an error of law was committed, or necessary facts are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa. Cmwlth. 92, 525 A.2d 841 (1987).

 We initially note that the burden of proving willful misconduct rests with the employer. *County of Luzerne v. Unemployment Compensation Board of Review*, 148 Pa.Cmwlth. 473, 611 A.2d 1335 (1992). Willful misconduct has been judicially defined as conduct which evidences the wanton and willful disregard of employer's interest, the deliberate violation of rules, the disregard of standards of behavior which an employer can rightfully expect from his employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional substantial disregard for employer's interest or the employee's duties or obligations. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976). Whether an employee's conduct constitutes willful misconduct is a question of law subject to this court's review. *Flores v. Unemployment Compensation Board of Review*, 686 A.2d 66 (Pa.Cmwlth.1996).

 Furthermore, a violation of an employer's work rules and policies may constitute willful misconduct. *Frumento*. An employer must establish the existence of the rule and its violation. *Williams v. Unemployment Compensation Board of Review*, 141 Pa.Cmwlth. 667, 596 A.2d 1191 (1991). If the employer proves the existence of the rule, the reasonableness of the rule, and the fact of its violation, the burden of proof shifts to claimant to prove that he or she had good cause for the action. *Brady v. Unemployment Compensation Board of Review*, 115 Pa.Cmwlth. 221, 539 A.2d 936 (1988).

 Based on our review of the record, we are convinced that the school district satisfied its burden of proof. There is no dispute as to the existence and reasonableness of the school district's rule which explicitly states that the physical touching or striking of a student by any means for the purposes of discipline is prohibited. Additionally, we conclude that the board's findings support its conclusion that claimant acted unreasonably and in clear violation of the school district's rule prohibiting corporal punishment.

The findings reveal that claimant admitted to being aware of the rule against corporal punishment. Moreover, claimant conceded to striking the student three separate times and stated to the vice-principal that he had lost his composure while dealing with the student. Since the school district satisfied its burden of proof, we must determine whether the board's finding that claimant did not have good cause for his actions is supported by substantial evidence.

Contrary to the board's determination, claimant believes that he had good cause for his actions, such that his actions were justified and reasonable considering the circumstances. Specifically, claimant alleges that he reacted as he did because the student had threatened him both verbally and physically and he could not retreat from the confrontation due to the narrow bus aisle. In so doing, claimant contends that the board failed to correctly summarize the school district's corporal punishment policy because the board did not make findings of fact which determined whether claimant acted in self-defense or to quell a disturbance.[4] We are not persuaded by this argument.

First, the incidents which are at issue involve only claimant and the student. There is no evidence in the record that a disturbance involving the student needed to be suppressed even by the use of reasonable force. Rather, the record reveals that claimant disciplined the student by use of corporal punishment in violation of the school district's clear mandate.

Next, claimant asserts that he had a reasonable belief of imminent bodily harm such that his actions would constitute self-defense. The board's findings, however, belie this assertion. They reveal that claimant increased the emotional intensity of the situation by smashing a bag of chips into the student's chest twice. After a student teacher escorted the student to the back of the bus, claimant walked to the back of the bus to quiet some noisy students. While doing so, claimant told the student to sit down in his seat.

---

**4.** Chapter 7 of the school district's code of discipline lists four exceptions to the prohibition against the use of corporal punishment. A teacher or school authority may use **reasonable** force on a student if it is to quell a disturbance, to obtain possession of weapons or other dangerous objects, for the purpose of self-defense and for the protection of persons or property. R. at 46a.

The student then placed his hand in front of claimant's face, but did not touch him. Claimant began to yell at the student and spit on the student's hand. After the student wiped his hand on claimant's shirt, claimant responded by striking the student on his left jaw. Claimant also testified that he did not have time to think while the situation escalated out of control. Notes of Testimony (N.T.) at 45. This substantial, competent evidence completely undermines claimant's allegation that the student created such an apprehensive environment that claimant formed a reasonable fear of imminent bodily harm.

In addition, claimant did not attempt to avoid the confrontation with the student or seek assistance from other members of the staff, who were readily available.[5] As the board declared, claimant could have taken other measures in order to resolve the incident in a reasonable manner. Consequently, we conclude that the record solidly supports the board's conclusions that claimant behaved unreasonably and did not have good cause for his actions. *See Bivins v. Unemployment Compensation Board of Review,* 79 Pa.Cmwlth. 643, 470 A.2d 662 (1984) (teacher denied unemployment compensation benefits because he struck a fifteen year old student after the student swore and threw a chair at the teacher).

We also note that this situation involves a teacher with extensive experience and a thirteen-year old seventh grader. Contrary to claimant's comparisons, this is not a disagreement between adult co-employees in the private workplace. We expect teachers to abide to a higher standard of care in these circumstances as evidenced by the school district's detailed code of discipline and the Commonwealth's Public School Code of 1949.[6]

---

**5.** There is uncontroverted evidence in the record that a student teacher was holding one of the student's arms when claimant struck him. N.T. at 25, 44.

**6.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702. In particular, we note Article XI, Section 1122, 24 P.S. § 11–1122, which relates to the termination of teacher contracts. The statute provides in pertinent part:

Accordingly, the order of the board is affirmed.

### ORDER

NOW, this 1st day of June, 1998, the order of the Unemployment Compensation Board of Review, dated August 11, 1997, at No. B–363425, is affirmed.

(a) The only valid causes for termination of a contract ... entered into with a professional employe shall be immorality; incompetency; unsatisfactory teaching performance ...; intemperance; cruelty; persistent negligence in the performance of duties; wilful neglect of duties....