# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frances Freeman, : 
                  Petitioner : 
: 
          v. : No. 669 C.D. 2015
: SUBMITTED: November 13, 2015
Unemployment Compensation : 
Board of Review, : 
                  Respondent : 

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                **FILED: January 8, 2016**

Petitioner, Frances Freeman, petitions for review from the decision of the Unemployment Compensation Board of Review determining that she was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law), 43 P.S. § 802(e).[1] We affirm.

Petitioner was last employed as a full-time dietetic assistant by Temple University Hospital (Employer) at a final rate of $19.01 per hour.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). This section states, in relevant part, that a claimant is ineligible for unemployment benefits when her "unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work, irrespective of whether or not such work is 'employment' as defined in this act[.]"

Petitioner was employed by Employer from September 8, 1988 through November 7, 2014. Temple had a written policy regarding diet adjustments. The policy provided that "[h]ostess will adjust trays on the floor as long as the requested item is within the current diet order." Certified Record (C.R.), Item 13; Employer's Exhibit No. 1. The personalized menu selection policy states that "the dietitian, patient services supervisor or clinical nutrition manager shall approved (sic) menu items for patients on special diets." *Id*. Item 13; Employer's Exhibit No. 2. The trayline operation policy states that a supervisor must approve substitutions made on the trayline. *Id*., Item 13; Employer's Exhibit No. 3. Employer also had a progressive discipline policy. *Id*., Item 4.

On October 24, 2014, a patient asked Petitioner to make him a seafood salad on a pita. Petitioner went to the catering area and began to assemble the requested item. The executive chef saw Petitioner making the seafood salad and questioned her regarding whether she had checked the patient's diet order. When Petitioner admitted that she had not done so, the executive chef stopped her from making the seafood salad. Petitioner's supervisor interviewed her about the incident. Petitioner admitted that she did not check the patient's diet order and did not confer with the chef or a supervisor before making the seafood salad. The patient's diet order contained several restrictions, including not eating shellfish. Employer terminated Petitioner's employment for failing to check the patient's diet order and for failing to receive permission to use cafeteria items.

Petitioner applied for unemployment compensation benefits, which the UC Service Center denied on the basis that her behavior constituted willful misconduct. Petitioner appealed the notice of determination and the referee held a hearing at which Petitioner's supervisor, Meghan Parncutt, and Petitioner testified.

2

Parncutt testified regarding Employer's diet adjustment policy and other food service policies. December 16, 2014, Hearing Notes of Testimony at 8-12. She stated that Petitioner should have checked with a supervisor before making an off-menu item for the patient. *Id*. at 10. She testified that upon questioning, Petitioner stated that she did not talk to a supervisor because she wasn't thinking. *Id*. at 11. She stated that the purpose of the diet adjustment policy was to ensure that patients did not receive food that could "go against their condition" and any medication the patient may or may not be taking. *Id*. at 12. She also testified that Petitioner had been disciplined previously including an initial discussion, a written warning, a final written warning and a one-day suspension. *Id.* at 8-9. Petitioner testified that checking the patient's diet order "slipped her mind" and she admitted that she should have done so. *Id.* at 14-15. Further, she stated that she assumed the patient was telling her the truth when he said he could eat seafood salad, she did not check with a supervisor because she thought it was all right and she used imitation crab meat. *Id.* She also testified that she thought that Employer's motto was patients come first and that she should accommodate the patient. *Id*. at 12.

The referee denied the appeal concluding that she had engaged in willful misconduct because she knowingly violated Employer's policies. The referee determined that Petitioner's failure to think about checking the diet order did not constitute just cause and, therefore, she was ineligible for benefits under Section 402(e).

Petitioner appealed to the Board, which found that despite being aware of Employer's policies and knowing that her job was in danger, Petitioner prepared the seafood salad without checking the patient's diet order and without obtaining permission. The Board acknowledged Petitioner's testimony that she

3

thought that the patient could have the seafood salad because he requested it, but the Board stated that the purpose of Employer's policies was to ensure that patients received food compliant with their diet, condition and medication and, therefore just because a patient requested a food item did not mean that the patient was allowed to have the item. The Board did not find credible Petitioner's testimony that checking the diet order slipped her mind. The Board concluded that Petitioner had failed to establish good cause for her behavior and was ineligible to receive benefits under Section 402(e) of the Law. This appeal followed.

Petitioner concedes that she violated Employer's policy, but asserts that her actions do not constitute willful misconduct because her behavior was negligent rather than intentional or deliberate. She argues that inadvertent rule violation or poor judgement is not willful misconduct and that the Board did not find that her behavior was intentional or deliberate.

Willful misconduct is defined as: (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). If a claimant is discharged for violating a work rule, the employer bears the initial burden of showing "the existence of a work rule and that the claimant violated the rule." *ATM Corp. of Am. v. Unemployment Comp. Bd. of Review*, 892 A.2d 859, 865 (Pa. Cmwlth. 2006). "Once the employer establishes those elements, the burden then shifts to the claimant to show that she had good cause to violate the rule." *Id*. Good cause exists "where the action of the employee is justified or

4

reasonable under the circumstances." *Frumento v. Unemployment Comp. Bd. of Review*, 351 A.2d 631, 634 (Pa. 1976).

Employer demonstrated that it had a policy requiring Petitioner to check a patient's diet order and prohibiting the adjustment of a patient's diet without prior approval. Accordingly, Employer met its burden. It was Petitioner's burden to demonstrate that, in disregarding Employer's policies, she acted with good cause, i.e., her behavior was reasonable under the circumstances. The Board did not credit Petitioner's testimony that checking the patient's diet order and obtaining permission simply slipped her mind. The Board noted that Employer's policies are in place to ensure a patient's compliance with diet, condition and medication. While Petitioner's actions were not malicious, she deliberately violated the work rule without reasonable cause. Further, her behavior could have endangered the patient's health and was in disregard of Employer's interests and of her duties and obligations to Employer.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frances Freeman, : 
Petitioner : 
 : 
v. : No. 669 C.D. 2015
 : 
Unemployment Compensation : 
Board of Review, : 
Respondent : 

# **O R D E R**


AND NOW, this 8th day of January, 2016, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.


_____
**BONNIE BRIGANCE LEADBETTER,**
Judge