IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arcenia L. Easley,                         :
                        Petitioner          :
                                            :
        v.                                  :   No. 1225 C.D. 2018
                                            :   SUBMITTED:  April 18, 2019
Unemployment Compensation Board  :
of Review,                                  :
                        Respondent          :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  July 26, 2019

        Arcenia Easley (Claimant) petitions this Court for review of a July 9, 2018
order of the Unemployment Compensation (UC) Board of Review (Board) which
affirmed the decision of a referee finding her ineligible for UC benefits under Section
402(e) of the UC Law (Law)[1] (relating to willful misconduct).  Claimant argues on
appeal that she did not intentionally violate company policy and therefore did not
commit willful misconduct.  Claimant further argues she is entitled to a remand
hearing because the record from the referee's hearing is incomplete.  After review,
we affirm.

        [1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(e).  Section 402(e) of the Law provides that an employee is ineligible for UC benefits for any
week "[i]n which [her] employment is due to [her] discharge . . . from work for willful misconduct
connected with [her] work."

**Background**

Claimant worked as a caregiver with Community Living and Support Services (Employer) from January 30, 2014 through January 31, 2018. Certified Record (C.R.), Item No. 2, Internet Initial Claims; Notes of Testimony (N.T.), 5/11/18, at 5. Claimant's work responsibilities, as set forth in her job description, include taking Employer's clients to "appropriate medical, vocation and miscellaneous appointments when necessary." N.T., 5/11/18, Ex. No. 2. Claimant signed a copy of her job description on January 30, 2014. *Id.* Employer has a "Staff Expectations" policy which provides in relevant part that employees are not to engage in negative conversations regarding other staff in front of Employer's clients. *Id.*, Ex. No. 1. This document was also signed by Claimant on January 30, 2014. Employer's employee handbook separately provides that violence is not tolerated in the workplace. C.R., Item No. 3, Employer Separation Information. Threats, threatening conduct, or any other physical or verbal acts of aggression will not be permitted. *Id.* Employees determined to have violated this policy will be terminated. *Id.* Insubordination by staff is likewise grounds for immediate termination. *Id.* Insubordination includes a refusal to carry out a reasonable work request or instruction of a supervisor. *Id.* Claimant signed an acknowledgment of her receipt of the Employee Handbook on February 11, 2014. *Id.*

On January 31, 2018, Claimant was terminated from her position for using profanity, refusing to carry out a reasonable work request from her supervisor, and physically threatening her supervisor. C.R., Item No. 3. Claimant filed for UC benefits March 27, 2018. C.R., Item No. 2. Claimant acknowledged she was discharged from employment due to a disagreement with her supervisor. *Id.* During an April 9, 2018 oral interview with Alice Wallace, a representative of the UC

2

Service Center (Service Center), Claimant asserted she was asked by Beth Dotson, her supervisor, to take a client to a medical appointment. C.R., Item No. 4, Record of Oral Interview. Claimant stated that it was not in her job description to take clients to medical appointments. *Id.* Claimant admitted she refused to take the client to the appointment because she was not feeling well and "it wasn't [her] job." *Id.* Claimant denied using profanity or threatening her supervisor. *Id.* In the four years Claimant worked for Employer, she had never taken a client to a medical appointment. *Id.*

The Service Center issued its determination on April 13, 2018, finding that Claimant was discharged for using profanity, refusing reasonable requests of her employer, and threatening violence in the workplace. C.R., Item No. 5, Notice of Determination. Claimant's actions showed a willful disregard of Employer's interests. As such, Claimant committed willful misconduct and was ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed this determination.

A hearing before the Referee was held on May 11, 2018. The hearing notice mailed to Claimant indicated the hearing would take place at the Pittsburgh Referee Office located in Pittsburgh, Pennsylvania. C.R., Item No. 8. Claimant did not appear at the hearing. The Referee noted for the record that the hearing notice was mailed to Claimant at her last known address, which was the same address Claimant provided on her appeal petition. N.T., 5/11/18, at 2. The hearing notice was not returned as undeliverable by the postal authorities and no continuance request had been received. *Id.* The hearing commenced in Claimant's absence. Employer presented the testimony of Ms. Dotson, Employer's Residential Homes Manager and Claimant's immediate supervisor.

Ms. Dotson testified that during Claimant's shift on January 31, 2018, Claimant was directed to take a client to a medical appointment. N.T., 5/11/18, at

3

7. Claimant indicated she was not feeling well and taking clients to medical appointments was not one of her job duties. *Id.* Ms. Dotson traveled to the home in which Claimant provided care to check on her welfare. *Id.* Claimant asserted she was still feeling ill. *Id.* Ms. Dotson reiterated the need for Claimant to take the client to his medical appointment. *Id.* Claimant responded that it was "not her fucking job" to take clients to appointments and Ms. Dotson "needed to do [her] fucking job" and take the client to the appointment. *Id.* at 8. Ms. Dotson told Claimant she would stop by later and see if she was feeling better. *Id.*

Claimant was still unwell when Ms. Dotson returned. *Id.* Ms. Dotson told Claimant that if she was too ill to work, she should go home. *Id.* Claimant asked if she could just stay and work at her own pace. *Id.* Ms. Dotson reiterated that if Claimant was too ill to work, she should go home. *Id.* Claimant left the room, cursing. *Id.* At that point, Ms. Dotson instructed Claimant to leave, as Employer's clients could hear what she was saying. *Id.* While gathering her belongings, Claimant continued to swear, stating "this is fucking ridiculous," and argued no one else in the house did any work. *Id.* The daughter of another staff member was also present at the time and could hear Claimant. *Id.* Ms. Dotson testified that Claimant called her a troll, and stated that Ms. Dotson got "on her nerves," and Claimant "should punch her in the fucking face." *Id.* Subsequently, Claimant was terminated from her employment on the basis of insubordination and making threats of violence against a co-worker. *Id.* at 6.

The Referee issued his decision on May 17, 2018. The Referee found that Claimant's job duties included taking clients to appropriate medical appointments. C.R., Item No. 10, Referee's Decision, Finding of Fact (F.F.) No. 2. Employer had a workplace policy that prohibited employees from making threatening remarks and

4

provided for the immediate termination of an employee who refused to carry out a reasonable work request or instruction of a supervisor. F.F. Nos. 3-4. On January 31, 2018, Claimant was asked to take a client to a medical appointment but she refused, stating she did not feel well and it was not her job. F.F. Nos. 5-6. When Ms. Dotson checked on Claimant, Claimant reasserted it was not her "fucking job" to take clients to medical appointments and Ms. Dotson needed to "do [her] fucking job." F.F. Nos. 8-9. Claimant called Ms. Dotson a troll and told a co-worker[2] "I should punch her in the fucking face." F.F. No. 13. Employer subsequently terminated Claimant for insubordination and making threats of violence against a co-worker. F.F. No. 14.

The Referee noted that Claimant failed to show for the hearing despite having been duly notified of its date, time, and location. Referee Decision at 2. The Referee found credible Ms. Dotson's testimony that Claimant refused a clear and specific directive and used offensive and threatening language to and about her supervisor. *Id.* at 3. Ms. Dotson's request that Claimant take a client to a medical appointment was not unreasonable. *Id.* Therefore, Claimant's actions demonstrated a willful disregard of Employer's interests rising to the level of willful misconduct. *Id.* The Referee affirmed the determination of the Service Center that Claimant was ineligible for benefits pursuant to Section 402(e) of the Law. *Id.*

Claimant appealed to the Board. She asserted that she went to the wrong location, believing the hearing was scheduled to take place in McKeesport, Pennsylvania. C.R., Item No. 11. By the time she realized her error, it was too late. *Id.* Claimant requested another hearing so she could provide testimony about what occurred the day she was terminated. *Id.* The Board denied Claimant's request for

_____

[2] Presumably, this is a reference to the daughter of a staff member who was present during Claimant's diatribe. N.T., 5/11/18, at 8.

5

a remand hearing on the basis she was responsible for arriving at the correct hearing location. C.R., Item No. 13. The Board adopted the Referee's findings of fact and conclusions of law and affirmed his decision. *Id.* This appeal followed.

## Issues

On appeal,[3] Claimant argues the Board erred when it denied her request for a remand hearing and affirmed the Referee's decision finding her ineligible for UC benefits.

## Discussion

First, we address Claimant's argument that her request for a remand should be granted as she was unrepresented by counsel at the time of the original hearing.[4] Claimant asserts her mistake in traveling to the incorrect hearing location was reasonable as she had participated in prior UC hearings in McKeesport. As only Employer presented testimony at the May 11, 2018 hearing, Claimant asserts that a remand was required to create an accurate record.

The Board noted that Claimant did not deny receiving the hearing notice which directed her to appear for a hearing in Pittsburgh, Pennsylvania. As such, her failure to appear was based on her own negligence.

We agree with the Board. A party's own negligence is not sufficient good cause for failing to appear at a referee's hearing. *Eat'N Park Hosp. Grp., Inc. v. Unemployment Comp. Bd. of Review*, 970 A.2d 492, 494 (Pa. Cmwlth. 2008). The hearing notice received by Claimant clearly indicated the hearing was to take place in Pittsburgh, Pennsylvania. Claimant's failure to carefully read the hearing notice

---

[3] Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Doyle v. Unemployment Comp. Bd. of Review*, 58 A.3d 1288 (Pa. Cmwlth. 2013).

[4] Claimant is represented by counsel for this appeal.

was the cause of her absence at the May 11, 2018 hearing. As Claimant failed to appear at the hearing through her own negligence, we cannot conclude the Board erred in denying her request for a remand hearing.

Next, we address whether the Board erred in determining that Claimant committed willful misconduct. Claimant argues her conduct was not intentional and deliberate, and thus it cannot be said that she committed willful misconduct. Claimant maintains she did not believe her job description included taking Employer's clients to medical appointments as she had never performed that function in the four years she worked for Employer.

The Board dismissed Claimant's assertion that she did not realize her job duties included taking clients to medical appointments. Claimant's job description, signed by Claimant when she first began working for Employer, expressly states that she may be required to take clients to medical appointments when necessary. As such, Ms. Dotson's request was reasonable and Claimant's refusal to cooperate with that request constituted willful misconduct. Furthermore, Claimant's abusive language directed at Ms. Dotson evidenced a disregard of the standards of behavior an employer expects of an employee.

Willful misconduct, as defined by the courts, relevantly includes a deliberate violation of an employer's rules or a disregard of the standards of behavior which an employer can rightfully expect from an employee. *Johnson v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014). The employer bears the burden of establishing an employee engaged in willful misconduct. *Id.* With regard to a deliberate violation of an employer's rules, if the employer proves the existence of the rule, the reasonableness of the rule, and the fact of its violation, the burden

7

then shifts to the claimant to prove she had good cause for her actions. *Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 522 (Pa. Cmwlth. 1999).

An employee's refusal to comply with a reasonable request of her employer also constitutes willful misconduct. *Devine v. Unemployment Comp. Bd. of Review*, 429 A.2d 1243, 1244 (Pa. Cmwlth 1981). Whether or not an employee's refusal constitutes willful misconduct depends upon the reasonableness of the request and the reasonableness of the refusal. *Id.* Where an employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. *Frumento v. Unemployment Comp. Bd. of Review*, 351 A.2d 631, 634 (Pa. Cmwlth. 1976). If the employer satisfies its burden, the burden shifts to the employee to show she had good cause for her conduct. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993).

The record demonstrates that Employer had a policy which prohibited employees from engaging in negative conversations about other staff in front of its clients. Claimant signed this document at the outset of her employment. Employer's employee handbook, signed by Claimant on February 11, 2014, provided that threats, threatening conduct, or any other physical or verbal acts of aggression were not permitted and employees who violated the policy were subject to termination. It cannot be seriously argued that such policies are unreasonable.

The Referee accepted as credible the testimony of Ms. Dotson that Claimant became verbally abusive when asked to take one of Employer's clients to a medical appointment. While in the presence of Employer's clients, Claimant called Ms. Dotson, her direct supervisor, a troll, stated that Ms. Dotson got "on her nerves," and threatened violence against her. N.T., 5/11/18, at 8. The Board expressly credited this testimony when it adopted and incorporated the Referee's findings and

8

conclusions. It is well settled that the Board is the ultimate factfinder in UC cases and empowered to determine the credibility of witnesses. *Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

Based on Ms. Dotson's testimony, we conclude the record contains substantial evidence to support a finding that Claimant committed willful misconduct when she violated Employer's employment policies.

As to Claimant's refusal to comply with Ms. Dotson's reasonable request, the record demonstrates that Claimant's work responsibilities, as set forth in her job description, included taking Employer's clients to "appropriate medical, vocation and miscellaneous appointments when necessary." N.T., 5/11/18, Ex. No. 2. Claimant's awareness of this responsibility is evidenced by her signature on the job description. Furthermore, Employer's employee handbook provided that insubordination by staff, which definition included a refusal to carry out a reasonable work request or instruction of a supervisor, was grounds for immediate termination. As discussed herein, Claimant acknowledged her receipt of this document on February 11, 2014. Ms. Dotson's request that Claimant fulfill one of her enumerated work responsibilities was entirely reasonable. Claimant was provided an opportunity to go home if she was too ill to work and she declined, saying she wanted to stay and work at her own pace. Claimant's belief, as stated in her April 9, 2018 oral interview, that transporting clients to medical appointments was not part of her job description, is not sufficient justification for refusing to comply with Ms. Dotson's request. Consequently, we agree with the Board that Claimant committed willful misconduct.

9

For these reasons, we affirm the order of the Board.


_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arcenia L. Easley,             :
               Petitioner      :
                                :
       v.                    :   No. 1225 C.D. 2018
                                :
Unemployment Compensation Board   :
of Review,                      :
               Respondent     :

# **O R D E R**

AND NOW, this 26th day of July, 2019, the July 9, 2018 order of the Unemployment Compensation Board of Review is hereby affirmed.

_____
ELLEN CEISLER, Judge