# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Juanel Q. Jones,                :
               Petitioner      :
                                    :
          v.                    :     No. 396 C.D. 2019
                                    :     SUBMITTED: October 4, 2019
Unemployment Compensation Board   :
of Review,                       :
               Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**           **FILED: October 29, 2019**

Claimant, Juanel Q. Jones, petitions for review of an order of the Unemployment Compensation Board of Review that affirmed the order of the referee denying her unemployment compensation benefits pursuant to the willful misconduct provision found in Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

The relevant facts as found by the Board are as follows.[2] From August 2017 to September 2018, Claimant worked as a full-time anesthesia technician for

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

[2] After considering the entire record, the Board adopted and incorporated the referee's findings and conclusions in their entirety *and* rendered additional findings and conclusions. This is contrary to Claimant's assertion that the Board made no independent findings of fact. In unemployment compensation cases, the Board is the ultimate finder of fact "empowered to resolve conflicts in evidence, to determine the credibility of witnesses, and to determine the weight to be accorded

Western Penn Allegheny Health (Employer). (Finding of Fact "F.F." No. 1.) Claimant was aware or should have been aware of Employer's code of conduct prohibiting inappropriate behavior by employees and providing for disciplinary action up to and including termination of employment for violation of the policy. (F.F. No. 2 and March 6, 2019 Decision "Dec." at 1.) Employer terminated her employment, concluding that she violated the policy by "being belligerent, uncooperative, and inappropriate in her behavior" toward a security guard in a hospital parking garage reserved for visitors, patients, and paid leaseholders (Reserved Garage). (F.F. Nos. 3 and 17.)

By way of background, Claimant had a scheduled doctor's appointment one morning and pulled into the Reserved Garage at which time the security guard asked her to state her business. (F.F. No. 4.) She advised him that she had an appointment and responded affirmatively to his query as to whether she was a hospital employee. (F.F. Nos. 5 and 6.) While performing his rounds in the Reserved Garage later that day, the security guard observed Claimant's car. Consequently, when he saw her exiting the hospital and walking to her car at approximately 6:00 p.m., he approached her and asked if she had "gotten off work." (F.F. No. 7.) When she answered in the affirmative, he followed his superior's directive and asked for her name and department. (F.F. No. 8.) She refused his requests for that information, repeatedly asking him why he needed it. (F.F. No. 9.) Subsequently, Claimant started her car and proceeded to drive through the Reserved Garage with the security guard following in a marked car. (F.F. No. 10.) However, without a parking ticket, Claimant was unable to exit as she approached the gates. At that time, the security guard approached her car and asked to see her paid ticket.

evidence." *Oliver v. Unemployment Comp. Bd. of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010). On appeal, this Court may not disturb the Board's credibility findings or reweigh the evidence. *Id.*

2

After she refused to produce the ticket, he began videotaping her with his cell phone, at which time she accused him of preventing her from leaving. He advised her that she could leave with a paid parking ticket. (F.F. Nos. 11 and 12.) She "began to raise her voice, putting her hand up to block the security guard from videotaping her with his cell phone, and tried to knock [it] out of [his] hand." (F.F. No. 13.) Eventually, she backed up her car, pulled over to the parking lot attendant, got a new ticket, paid for her parking, and exited. (F.F. No. 14.)

Following the termination, Claimant applied for unemployment compensation benefits. The Harrisburg Overflow Center found her to be ineligible and she appealed. After two hearings at which both Claimant and Employer appeared and presented testimony and evidence, the referee concluded that Claimant's behavior constituted willful misconduct and affirmed. The Board affirmed, adopting the referee's decision with respect to willful misconduct and additionally concluding that Claimant failed to establish good cause for her conduct. In so ruling, the Board rejected Claimant's testimony that she was fearful of the security guard. Claimant's petition for review followed.[3]

Section 402(e) provides, in pertinent part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." The term "willful misconduct" has been defined to include the deliberate violation of rules and the disregard of standards of behavior which an employer can rightfully expect of its employee. *Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review*, 957 A.2d 786, 792 (Pa. Cmwlth. 2008). The

---

[3] Whether a claimant's conduct constitutes willful misconduct is a question of law over which we exercise plenary review. *Frazier v. Unemployment Comp. Bd. of Review*, 833 A.2d 1181 (Pa. Cmwlth. 2003).

3

employer bears the initial burden of proving that a claimant engaged in willful misconduct and, if the willful misconduct charge is based upon a violation of a work rule, the employer must prove the existence of the rule, its reasonableness, and that the employee was aware of the rule. *Brown v. Unemployment Comp. Bd. of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). Once an employer satisfies its prima facie case, the burden shifts to the claimant to demonstrate that the rule was unreasonable or that he had good cause for his conduct. *Id*. The claimant has good cause if his action "is justifiable or reasonable under the circumstances." *Frumento v. Unemployment Comp. Bd. of Review*, 351 A.2d 631, 634 (Pa. 1976). If the claimant establishes good cause, the conduct is "not in disregard of standards that the employer had a right to expect." *Rossi v. Pa. Unemployment Comp. Bd. of Review*, 676 A.2d 194, 197-98 (Pa. 1996).

In addition, findings of fact are conclusive on appeal as long as the record, taken as a whole, contains substantial evidence to support those findings. *Hessou v. Unemployment Comp. Bd. of Review*, 942 A.2d 194 (Pa. Cmwlth. 2008). Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnston v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). When ascertaining whether there is substantial evidence to support the findings of fact, we must examine the testimony in the light most favorable to the prevailing party, affording that party the benefit of any inferences which logically and reasonably can be drawn from the evidence. *Id*. Whether the record contains evidence to support findings other than those rendered by the Board is irrelevant. *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

In the present case, Claimant is improperly promoting her version of the facts in asserting that her actions did not constitute willful misconduct and that she had good cause for her behavior. With respect to willful misconduct, the Board credited the security guard's testimony regarding Claimant's actions when he initially approached her and asked her for her name and department. (Dec. 19, 2018, Dec. at 4.) He described her demeanor as loud, rude, and hostile and testified that she responded to his questions as follows:

> Basically she kept saying that I was harassing her. She kept saying that, you know she had the right to park here. She wouldn't tell me where she worked. At one point she told the lady she was talking to [her mother] to call 9-1-1. She stated that her uncle was a district attorney. Her father was a police officer.

(Nov. 21, 2018, Hearing, Notes of Testimony "N.T." at 15.)

Additionally, there is no merit to Claimant's contention that her behavior could not constitute willful misconduct because the incident did not occur in the hospital or involve her tasks as a health care worker. The incident occurred in Employer's parking garage, the security guard was acting as Employer's agent in performing his assigned duties, and Claimant parked her car in the Reserved Garage in violation of Employer's parking restrictions for employees. (F.F. No. 3.) As the security guard testified, it was standard protocol for him to ascertain verbally the business of the persons seeking to park in the Reserved Garage. (Dec. 11, 2018, Hearing, N.T. at 11-12.) In accordance with his duties, he also did checks at set times during the day to determine "how many cars are still in the garage to make sure you still have enough spaces available for patients, visitors and physicians still coming in." (*Id*. at 12.) Accordingly, while Claimant's unacceptable behavior did not occur in the course of her professional duties, it did occur while she was in the

5

Reserved Garage attached to the hospital and subject to Employer's rules as one of its employees.

Moreover, Claimant's remaining assertions with respect to willful misconduct are without merit. Even a single incident of such behavior is sufficient to disqualify her from receipt of benefits. *Maxwell v. Unemployment Comp. Bd. of Review*, 423 A.2d 430 (Pa. Cmwlth. 1980). Notably, Employer's policy provides for disciplinary action up to and including discharge. (F.F. No. 2.) No prior record of disciplinary actions is required. In addition, a finding of inappropriate behavior in contravention of an employer's code of conduct does not require that a claimant use profanity nor does it require an assessment as to whether any language used was sufficiently offensive in context. Regardless of whether Claimant used foul language, she behaved belligerently and inappropriately toward a security guard who was acting in accordance with Employer's interests.

Turning to the issue of good cause, the Board discredited testimony that Claimant was fearful of the security guard, thereby rejecting her contention that her inappropriate behavior was justified. (March 6, 2019, Dec. at 1.) In support, the Board noted the following. Despite the fact that Claimant was on the phone with her mother during the incident and asked her mother to call 9-1-1, neither of the women did so. In addition, Claimant never reported the incident to the security guard's supervisor. (Dec. 19, 2018, Dec. at 3.) Moreover, the Board observed that the security guard was the same one that Claimant had encountered in the morning, that he was dressed in uniform with security patches and a badge, and that he was driving a car with "Security" emblazoned on the side. (March 6, 2019, Dec. at 4.) Accordingly, the Board reasoned that Claimant "knew that this was not some random stranger approaching her to ask for information or following her around the

6

garage" and that she would "have had no other reason to refuse to provide the minimal information of her name and department, unless she knew she was not supposed to be parking in the garage while she was working." (*Id.*) We agree that such an inference could logically and reasonably be drawn from the credited evidence adduced at the two hearings, especially when Claimant readily answered questions from the same security guard upon her arrival in the Reserved Garage.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Juanel Q. Jones,             :
            Petitioner    :
                       :
        v.            :   No. 396 C.D. 2019
                       :
Unemployment Compensation Board  :
of Review,                :
           Respondent   :

## O R D E R

AND NOW, this 29th day of October, 2019, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

 

 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge