Township of Darby, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued April 6, 1981, before Judges MENCER, BLATT and MACPHAIL, sitting as a panel of three.

*John E. Kustriss,* with him *A. Leo Sereni, Sereni & DiLullo,* for petitioner.

*Francine Ostrovsky,* Assistant Attorney General, with her *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, May 28, 1981:

The Township of Darby (Township) appeals an order of the Unemployment Compensation Board of

Review (Board) granting unemployment compensation benefits to David Barnes (Barnes). The Board reversed the referee's decision that had found Barnes had been discharged for willful misconduct and, therefore, pursuant to Section 402(e) of the Unemployment Compensation Law (Law)[1] was ineligible for benefits.

The facts of this case are uncontested. The Township promoted Barnes to the position of Assistant Superintendent of Highways of that township in June 1978. His new job responsibilities included, inter alia, the transporting of workers back and forth to job locations, hauling trash when necessary, and performing other functions requiring the operation of a motor vehicle. It was essential, therefore, that Barnes have a Pennsylvania driver's license (License). From June 1978 until June 1979, Barnes knowingly drove the Township's vehicles without a License. The Township's Manager first became aware that Barnes was driving without a License in June 1979. The Manager immediately notified Barnes that in order to remain employed by the Township he was to obtain a permit and License by July 16, 1979. Barnes was immediately assigned duties that did not require driving.

Barnes did not apply for a License until July 17, 1979. When he failed to obtain his License by August 10, 1979, the Township suspended him for two weeks. On August 23, 1979, the Township sent Barnes a letter informing him that if he did not produce a License by

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) reads in pertinent part as follows:

> An employee shall be ineligible for compensation for any week—
>
> . . . .
>
> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . .

43 P.S. §802(e).

August 31, 1979, his employment would be terminated on that date.

The Bureau of Motor Vehicles, Pennsylvania Department of Transportation (BMV), also sent a letter to Barnes on August 23, 1979 informing him that his application was incomplete. The BMV advised him to secure a MV-180 form (learner's permit) from the State Police Barracks, complete the form, have it notarized, and return it with the appropriate fee. Barnes completed this procedure on August 29, 1979. On September 4, 1979, Barnes was terminated from his employment for failure to obtain a License by August 31, 1979.

Barnes applied to the Bureau (now Office) of Employment Security (Office). The Office granted him benefits. The Township appealed. A hearing was held on October 24, 1979. The referee reversed the Office's determination and denied benefits to Barnes holding that Barnes' failure to obtain a License was willful misconduct. Barnes appealed the referee's decision to the Board. On December 31, 1979, the Board reversed the referee's decision and granted benefits to Barnes. The Board held that Barnes' failure to produce the License by the Township's deadline was attributable to administrative error rather than any fault of his own. The Township appealed to this Court.

Willful misconduct is a question of law. *Boyer v. Unemployment Compensation Board of Review,* 51 Pa. Commonwealth Ct. 191, 415 A.2d 425 (1980). This Court has consistently held that

[f]or behavior to constitute wilful misconduct, it must evidence (1) the wanton and wilful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) neg-

ligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Kentucky Fried Chicken of Altoona v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 97, 309 A.2d 165, 168-169 (1973). Where, however, the actions of an employee are justifiable and reasonable under the circumstances, they will not be considered willful misconduct. *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976). Although the burden of proof is on the employer to prove misconduct, the burden to prove good cause is on the employee. *Lake v. Unemployment Compensation Board of Review,* 48 Pa. Commonwealth Ct. 138, 409 A.2d 126 (1979).

The Township argues that the Board erred as a matter of law in concluding that Barnes' failure to obtain a License was due to administrative error rather than to any fault of Barnes and was, therefore, not willful misconduct. We agree.

Since the party with the burden to prove good cause prevailed before the Board, our scope of review on appeal is to determine whether an error of law has been committed and whether any necessary finding of fact is unsupported by substantial evidence. *Lake, supra.*

Our review of the record convinces us that there was substantial evidence to support the Board's findings of fact.[2] There remains, then, the question of whether the Board made an error of law in concluding

---

[2] We must note that the Board's finding of fact No. 6 is subject to two interpretations. The finding reads as follows:

On August 23, 1979, the claimant was advised in a letter from the Bureau of Motor Vehicles that it would be necessary for him to secure an MV-180 Form from the State Police Barricks [sic], complete the form, have it notarized and return it to the Bureau with a fee, *as he had been in-*

that the delay occasioned by the error in submitting papers was sufficient "good cause" for Barnes' failure to meet the deadline for obtaining his license.

In applying the standard for determining good cause, we must evaluate the reasonableness of the cause in light of all of the surrounding circumstances. *Frumento, supra.* Good cause rests on good faith. *King v. Unemployment Compensation Board of Review,* 51 Pa. Commonwealth Ct. 396, 414 A.2d 452 (1980).

Barnes knew that a License is a necessary prerequisite for driving any vehicle. He also knew in late June that he was to have a License by July 16, 1979 if he wanted to continue working for the Township. Common sense dictates that when a deadline to complete a task has been given, one must act with deliberate speed to accomplish the assigned task. Yet, Barnes waited until the deadline had passed before he filed his initial application. At the hearing Barnes testified there was "no particular reason" why he waited until July 17, 1979 to apply for the License.

Barnes admitted that he was aware of a faster "24 hour" service for obtaining licenses available in the area.[3] Barnes indicated that he was concerned about the cost of the service and the cost of getting "over to

*correctly advised of the procedure when he made his application.* (Emphasis added.)

If this finding of fact is based solely on the contents of the letter from the BMV, this finding is in error. The letter from the BMV did not contain the emphasized phrase. This finding may also be interpreted as a statement of the contents of the letter and a conclusion made by the Board as to the reason Barnes had not sent the proper form. The Board in its discussion segment of its decision used the latter interpretation. We find there is substantial evidence in the record to support the latter interpretation.

[3] Although Barnes did not elaborate about the faster service, he apparently was referring to the private messenger services that are available in the Philadelphia area. These services make daily trips to Harrisburg with papers such as applications for Licenses.

Island Road.'' We note that Barnes did go to Island Road State Police Barracks both to apply for his License and again to obtain the MV-180. Barnes knew it was important to the Township and to himself that he obtain his License, yet he did not even try to use this faster service. Instead, he chose to trust the vicissitudes of the mail and bureaucratic paper shuffling when he knew time was of the essence.

Barnes also testified that he was concerned about a hearing problem with his one ear. After discussing the problem with the Township Manager, it was agreed that Barnes would only be required to drive within the Township limits.

Although there is nothing in the record that gives the exact date Barnes sent in his original application to the BMV, he did testify that it took nine (9) days for the incomplete application to be returned to him. Assuming the letter dated August 23, 1979, was delivered to Barnes on August 24, 1979, at the earliest, he did not mail in the original application until August 15, 1979, almost a month after he received it.

Barnes also failed to act with deliberate speed once he became aware of the problem with the MV-180. He already knew his employment would be terminated if he did not have his License by August 31, 1979. Barnes had the MV-180 form completed and notarized on August 29, 1979. Knowing the time it had taken to get the initial response from the BMV and that only two (2) days remained to meet the deadline, he again treated the matter as routine and again used the mails to transmit the forms to the BMV. Although it may have been a financial burden to utilize the faster service, the loss of employment is an even greater financial burden.

In total, the Township gave Barnes 63 days to obtain his License. Since Barnes already knew how to drive, 63 days was certainly ample time for Barnes to

complete the procedure for obtaining his License. Having delayed for so long without reason to apply for the License and having continued to treat the matter in a lackadaisical manner, it is unreasonable to now blame administrative delay for Barnes' failure to obtain his License.[4] Our review of the record convinces us that the Board erred as a matter of law in concluding that Barnes had good cause for failing to get his License within the twice extended time period.

The purpose of the Law is to be remedial and broadly construed so that employees who become unemployed through no fault of their own are provided with some semblance of economic security. *Frumento, supra.* Failure to obtain a License where there is a job related necessity for the license can be willful misconduct. *Lytle v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 77, 387 A.2d 962 (1978). Under the facts of the instant case, there was a demonstrated need for Barnes to have a License. Also, it was detrimental to the Township's interests for Barnes not to have a License. Barnes' actions clearly disregarded the standards of behavior that the Township has a right to expect from its employees and showed a substantial disregard of the Townships interests as well as his own duties and obligations.

Order reversed.

### ORDER

AND Now, this 28th day of May, 1981, Decision No. B-179229 of the Unemployment Compensation Board of Review dated December 31, 1979, granting unemployment benefits to David Barnes is hereby reversed.

---

[4] At the hearing Barnes testified that he was able and available for fulltime work. He further testified, however, that he had not yet obtained a License. Thus, at the time of the hearing, Barnes was still unable to work for the Township or any other employer in a position which required the driving of motor vehicles.