# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Daniel Harmon, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 787 C.D. 2015 |
| | : | Argued: March 8, 2017 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
    HONORABLE ROBERT SIMPSON, Judge
    HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE ANNE E. COVEY, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE JULIA K. HEARTHWAY, Judge
    HONORABLE JOSEPH M. COSGROVE, Judge

**OPINION BY JUDGE BROBSON**    **FILED: June 7, 2017**

Petitioner Daniel Harmon (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed an Unemployment Compensation Referee's (Referee) decision, finding Claimant ineligible for unemployment compensation benefits pursuant to Section 402.6 of the Unemployment Compensation Law (Law).[1] We now affirm.

Claimant was employed by Browns Shop Rite (Employer). On December 18, 2013, Claimant pled guilty to a charge of driving with a suspended or revoked driver's license, 75 Pa. C.S. § 1543 (b)(1). (Certified Record (C.R.), Item No. 2 at Docket Sheet.) As a result of Claimant's guilty plea, he was

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, added by the Act of October 30, 1996, *as amended*, 43 P.S. § 802.6.

sentenced "to 60 days confinement to be served on 30 consecutive weekends." (*Id.*) Claimant began serving his sentence on March 14, 2014, and he was permanently released on August 7, 2014. (*Id.*) During this period, Employer terminated Claimant's employment for reasons unrelated to his incarceration, and Claimant filed for unemployment compensation benefits effective March 23, 2014. (C.R., Item No. 1.) The Erie UC Service Center (Service Center) issued a determination finding Claimant ineligible for benefits for the weeks ending March 29, 2014, through July 26, 2014, because Claimant was incarcerated during this period. (C.R., Item No. 3 at Notice of Determination.) The Service Center further determined that Claimant's failure to report his incarceration while filing for unemployment compensation benefits resulted in a fault overpayment of benefits, for which the Service Center assessed a penalty of $438.75 and 17 penalty weeks. (*Id.*) Claimant appealed the Service Center's determination, and a Referee conducted a hearing.

During the hearing before the Referee, Claimant, who was unrepresented by counsel, testified that he worked an average of twenty hours per week prior to Employer's termination of his employment for "violation of company policy." (C.R., Item No. 7 at 4.) Claimant began serving his sentence for driving with a suspended license on March 14, 2014. (*Id.* at 5.) Throughout the length of his sentence, Claimant reported to the prison at 5:00 p.m. on Fridays and was released every Sunday at 3:00 p.m. (*Id.*) When he began serving his sentence, Claimant continued to work for Employer during the week. (*Id.* at 8.) After Employer terminated his employment, Claimant sought alternative employment, because he "was always available to work." (*Id.* at 9.) Claimant testified that he did not knowingly withhold information from the Service Center while filing for

2

unemployment compensation benefits. (*Id.* at 6.) Claimant indicated that he received but had not fully read an Unemployment Compensation Handbook. (*Id.*)

Andrea Quirk, an Unemployment Compensation Claims Examiner, also testified at the hearing before the Referee. Ms. Quirk testified that the Unemployment Compensation Handbook informs claimants that they are not eligible for "benefits for any week in which [the claimant is] incarcerated due to a conviction." (*Id.* at 7.) Although Claimant received the Unemployment Compensation Handbook, he did not inform the Service Center that he was incarcerated on the weekends. (*Id.*) Ms. Quirk cited Claimant's knowing failure to report his incarceration to the Service Center as justification for the assessment of the penalty and penalty weeks. (*Id.* at 7, 9.)

The Referee issued a decision, affirming the Service Center's determination as to Claimant's ineligibility for benefits under Section 402.6 of the Law. In so doing, the Referee made the following findings of fact:

1. The Claimant was last employed by Browns Shop Rite as a Customer Service Aide, part-time from 2/14/2013 through 3/24/2014 at a final rate of $9.75 per hour.

2. The Claimant's separation from employment is not at issue in this appeal.

3. The Claimant was incarcerated from 3/14/2014 through 8/7/2014 as a result of a traffic conviction for driving on a suspended license.

4. As part of the Claimant's conviction, the Claimant was ordered by the court to serve consecutive 48 hour periods, weekends in incarceration in prison.

5. The Claimant's weekly incarceration begins Friday at 5:00 p.m. through Sunday at 3:00 p.m. each week.

6. The Claimant states he is able to work and available to work around his incarceration.

(C.R., Item No. 8 at 1.) The Referee reasoned that Claimant was ineligible for benefits "due to his conviction and incarceration during the weeks at issue." (*Id.* at 2.) The Referee further found that Claimant did not intentionally withhold the information concerning his incarceration from the Service Center. Accordingly, the Referee modified the portion of the Service Center's award which assessed penalty weeks.

Claimant retained counsel and appealed the Referee's decision to the Board. Claimant contended that incarceration during the weekend does not render a claimant ineligible for benefits under Section 402.6 of the Law. Claimant's incarceration was not continuous, and Claimant argued that he was thus able and available to work during the week. Claimant further argued that because the Referee found that Claimant did not intentionally withhold information from the Service Center, the determination as to Claimant's fault overpayment should be reversed. The Board affirmed the Referee's decision as to Claimant's ineligibility for benefits under Section 402.6 of the Law and adopted the Referee's findings of fact and conclusions of law. The Board, however, modified the overpayment of benefits to a non-fault overpayment. Claimant petitioned this Court for review of the Board's order.

On appeal,[2] Claimant contends that the Board erred in concluding that Section 402.6 of the Law rendered him ineligible for benefits. In support of that contention, Claimant first argues that the plain language of Section 402.6 of the

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

Law requires that a claimant must be incarcerated for an entire week to be found ineligible for benefits. If, however, this Court concludes that the language of Section 402.6 of the Law is ambiguous, Claimant argues that the legislative intent behind the enactment of Section 402.6 of the Law precludes application of the section to claimants who are only incarcerated on the weekends. Claimant next argues that because the Law is to be liberally construed, Section 402.6 should not be applied in an overly punitive matter. Last, Claimant argues that Section 402.6 of the Law should be interpreted so as to be internally consistent with other provisions of the Law.[3]

We first address Claimant's argument that the plain language of Section 402.6 of the Law does not preclude him from being eligible for benefits. Section 402.6 of the Law provides: "An employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after a conviction." Claimant asserts that Section 402.6 requires that the claimant must be continuously incarcerated for the full week in order for a claimant to be found ineligible for benefits for a week. In support of this assertion, Claimant relies on the definition of the word "during," which is not defined in the Law and can, in some instances, imply continuity. Claimant contends that such a definition results in a "durational requirement"— namely, that a claimant is only ineligible for benefits under Section 402.6 of the Law if he or she is continuously incarcerated throughout the entirety of the week. Because Claimant was only incarcerated during the weekends, Claimant thus

_____

[3] Claimant's arguments as presented in his brief have been reorganized here for ease of discussion.

5

contends that he is eligible. The Board counters that "during" may also mean "at some point," and the Board's interpretation of Section 402.6 of the Law as precluding a claimant who is incarcerated during the weekend from receiving benefits is, therefore, reasonable.

When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa. C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines, Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth.), *appeal denied*, 685 A.2d 547 (Pa. 1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa. C.S. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker*, 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1).

As observed above, the term "during" is not defined in the Law. Where a term is not expressly defined in a statute, this Court will construe the term

6

according to its common and approved usage. 1 Pa. C.S. § 1903(a). "In ascertaining the common and approved usage or meaning, a court may resort to the dictionary definitions of the terms left undefined by the legislature." *Leventakos v. Workers' Comp. Appeal Bd. (Spyros Painting)*, 82 A.3d 481, 484 n.4 (Pa. Cmwlth. 2013), *appeal denied*, 93 A.3d 464 (Pa. 2014). Merriam Webster's Collegiate Dictionary provides the following definitions of the word "during": (1) "throughout the duration of," and (2) "at a point in the course of." Merriam Webster's Collegiate Dictionary 360 (10th ed. 1997). As the parties correctly note, these definitions differ in that the former appears to require continuity for a period of time, while the latter simply means at some point in a period of time. Claimant's interpretation of the statute would thus require a claimant's incarceration throughout the duration of a week of unemployment—*i.e.*, 24 hours a day, each day of a week. The Board's interpretation, by contrast, requires only that a claimant be incarcerated at some point in the week.[4] As both interpretations, in isolation, are reasonable, we conclude that the language of Section 402.6 of the Law is ambiguous, and, consequently, we reject Claimant's argument as to the plain language of the statute.

---

[4] Inserting the dictionary definitions of "during" into the language of Section 402.6 of the Law further illustrates the parties' conflicting interpretations. Claimant's interpretation would read as follows: "An employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment *throughout the duration of which* the employe is incarcerated after a conviction." Conversely, the Board urges us to adopt the following interpretation: "An employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment if *at a point in the course of which* the employe is incarcerated after a conviction."

Having concluded that the language of Section 402.6 of the Law is ambiguous, we must engage in statutory construction to discern the intent of the General Assembly. "One aid in construing statutory language is an administrative agency's interpretation of the language of the statute it is charged with administering, which will be given deference unless the interpretation is clearly erroneous." *Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 198 (Pa. Cmwlth. 2015). The Board's interpretation, which relies on one of two equally reasonable definitions of the term "during," is not clearly erroneous, and we address Claimant's remaining arguments bearing in mind the deference to which the Board's interpretation of Section 402.6 of the Law is entitled.[5]

---

[5] Although not directly on point, the Board's interpretation and application of the eligibility provision in Section 402.6 of the Law is consistent with how this Court interpreted an eligibility question in *DeMoss v. Unemployment Compensation Board of Review*, 454 A.2d 1146 (Pa. Cmwlth. 1983). In *DeMoss*, the Board denied benefits to claimants for disqualifying conduct under Section 402(d) of the Law, *as amended*, 43 P.S. § 802(d). Section 402(d) of the Law provides that an employee "shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute." On appeal, the claimants contended that because the disqualifying conduct occurred at the end of the work week, they should be eligible for a partial weekly benefit for the portion of the week preceding the disqualifying conduct. Rejecting the claimants' argument, this Court opined:

> The resolution of this case hinges upon the initial words of Section 402: "An employe shall be ineligible for compensation for any week . . . ." We believe that the use of the words "any week" denotes a legislative intent that an unemployed worker show eligibility for benefits during the entire period from Sunday through Saturday, and that disqualifying conduct during any portion of a week would result in loss of benefits for the entire week.

*DeMoss*, 454 A.2d at 1147. The language in Section 402.6 of the Law is different in two respects: (1) it includes the plural "weeks" instead of the singular "week" when referring to the period of ineligibility, and (2) includes the word "during." We do not perceive either difference as compelling us, from a statutory construction perspective, to apply Section 402.6 of the Law in a way that conflicts with our holding in *DeMoss*.

8

Claimant contends that the legislative history underlying the enactment of Section 402.6 of the Law illustrates the General Assembly's intent to preclude from receiving benefits only those claimants who are granted work release, but remain incarcerated and live at the taxpayers' expense throughout the entire week. In support of this argument, Claimant cites the Supreme Court of Pennsylvania's decision in *Chamberlain v. Unemployment Compensation Board of Review*, 114 A.3d 385 (Pa. 2015). There, the Board found that a claimant was ineligible for benefits under Section 402.6 of the Law, because the claimant was sentenced to serve a term of house arrest. During this house arrest, the claimant "spent no time in prison or any other state correctional institution, but rather lived at his sister's residence, and had permission to work, run errands, and shop for Christmas." *Chamberlain*, 114 A.3d at 387. The claimant appealed the Board's determination as to his eligibility to this Court, which reversed. In so doing, we explained that interpreting house arrest as the equivalent to incarceration for purposes of Section 402.6 of the Law would contravene the remedial purpose of the Law. The Pennsylvania Supreme Court affirmed our decision. Our Supreme Court cited the following comment, which was made immediately prior to the Pennsylvania House of Representatives' vote on the amendment of the bill concerning Section 402.6 of the Law:

> Mr. Speaker, this amendment would put into the . . . Law a prohibition which is similar to one which we inserted into the workers' compensation law in 1993. Specifically, this amendment says that someone who is incarcerated after a conviction does not receive unemployment benefits.
>
> I learned to my surprise a month or so ago from a business in my district that it is possible now, if you are convicted and you are in prison and you qualify for work release and your employer does not want you back, you

9

> then get unemployment compensation. This businessman in my district and the other employees in that company do not think that is right; I do not think that is right either, and I think we ought to change the law.

*Id.* at 396 (quoting H.R. Legis. Journal No. 31, 180th Gen. Assemb., Reg. Sess. 835 (Pa. 1996) (statement of Rep. William Lloyd)). The Supreme Court explained that this comment demonstrated the General Assembly's intent to change the law established by this Court's decision in *Greer v. Unemployment Compensation Board of Review*, 392 A.2d 918 (Pa. Cmwlth. 1978), wherein we concluded that an incarcerated claimant participating in a work release program was able to obtain unemployment compensation benefits. There was no evidence, however, that the General Assembly's intent to supersede *Greer* extended to the disqualification of "claimants who were not incarcerated in a prison or an alternative institutional setting, but rather were sentenced to the less severe sanction of home confinement." *Id.* Accordingly, the Supreme Court concluded that claimants sentenced to house arrest were not automatically ineligible for benefits under Section 402.6 of the Law.

Here, Claimant contends that unlike claimants participating in a work release program, he was not incarcerated and living at the taxpayers' expense for the majority of the week. Claimant thus argues that the legislative history, as explained in *Chamberlain*, does not support precluding claimants from receiving benefits when they are free from incarceration for the majority of the week. This Court, however, has recently applied Section 402.6 of the Law to a claimant sentenced to weekend incarceration, rather than work release. In *Gonzalez v. Unemployment Compensation Board of Review*, (Pa. Cmwlth.,

10

No. 1825 C.D. 2014, filed Aug. 18, 2015),[6] the Board concluded that a claimant who was sentenced to weekend incarceration was ineligible for benefits under Section 402.6 of the Law. The claimant appealed to this Court, arguing "that because he is only incarcerated for two days per week, days in which he did not usually work anyway, that he established eligibility for unemployment compensation benefits." *Gonzalez*, slip op. at 1. In affirming the Board's order, we explained that the claimant's ability to work during the week was not dispositive. Rather, "the decision in *Chamberlain* makes clear that the applicability of Section 402.6 [of the Law] does not depend upon the claimant's availability for work, but upon the meaning of the term incarceration, which it found to be 'starkly different' from home confinement." *Id.*, slip op. at 3. We concluded that although the claimant was only incarcerated during the weekend, there was no question that he was "incarcerated" for the purposes of Section 402.6 of the Law, and, therefore, the claimant was ineligible for benefits.

Claimant contends that *Gonzalez* is distinguishable from the instant matter, because the only question in *Gonzalez* was whether the *pro se* claimant was "incarcerated" for the purposes of Section 402.6 of the Law. Here, in contrast, Claimant concedes that he was incarcerated but argues that he is nevertheless eligible for benefits, because his weekend incarceration does not satisfy the "durational requirement" of Section 402.6 of the Law. We are not persuaded that this argument necessitates a different result from that in *Gonzalez*. The principles developed in *Chamberlain*, as we explained in *Gonzalez*, demonstrate that the

---

[6] This case is cited for its persuasive value pursuant to Section 414 of the Commonwealth Court's Internal Operating Procedures.

11

applicability of Section 402.6 of the Law depends upon whether a claimant is incarcerated within the meaning of the Law. Claimant here concedes that he was incarcerated. (Claimant's Br. at 10, 28.) Further, even if Claimant argued that he was not incarcerated within the meaning of Section 402.6 of the Law, Claimant's sentence is different from the sentence of home confinement at issue in *Chamberlain*, because Claimant was confined, at least part of the week, in a correctional facility at the expense of taxpayers. In this sense, Claimant's sentence is similar to that of claimants participating in work release programs, which the General Assembly clearly intended to preclude from receiving benefits when it enacted Section 402.6 of the Law. Accordingly, we reject Claimant's argument as to the legislative history of Section 402.6 of the Law.

Claimant next argues that the Board's interpretation of Section 402.6 of the Law is overly punitive and contravenes the remedial purpose of the Law. Specifically, Claimant maintains that the Law must be liberally construed so as to provide the broadest possible benefits. Claimant explains that the Board's interpretation of Section 402.6 of the Law would unjustly prevent Claimant from receiving benefits for seven and a half months even though the term of his sentence was only two months.

Section 3 of the Law,[7] relating to declaration of public policy, provides that "[e]conomic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth." As such, it is well-settled that "[t]he purpose of the Law is to be remedial and broadly construed so that employees who become unemployed through no fault of their own are

_____

[7] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, 43 P.S. § 752.

12

provided with some semblance of economic security." *Darby Twp. v. Unemployment Comp. Bd. of Review*, 429 A.2d 1223, 1227 (Pa. Cmwlth. 1981). "Conversely, disqualification provisions . . . should be narrowly construed and a claimant must not be denied compensation unless he is unequivocally excluded by the plain language of these provisions." *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). As noted above, the applicability of Section 402.6 of the Law is dependent upon whether a claimant is incarcerated. The extent of a claimant's confinement is, at best, only relevant to a determination of whether a claimant is incarcerated within the meaning of Section 402.6 of the Law. *See Chamberlain*; *Gonzalez*. Claimant concedes that he was incarcerated, and, consequently, when interpreted in light of the discussions above he is excluded from receiving unemployment compensation benefits under Section 402.6 of the Law. Accordingly, we reject Claimant's argument that the Board's interpretation of Section 402.6 of the Law is overly punitive and contravenes the remedial purpose of the Law.[8]

---

[8] Within this argument, Claimant contends that the Board's interpretation also disregards the purpose of a partial confinement sentence—namely, so that an individual may work or search for employment. We note, however, that although a sentence of partial confinement may be appropriate for claimants who are employed or seeking employment, the receipt of unemployment compensation benefits is not a purpose for which a partial release may be granted. 42 Pa. C.S. § 9755(c) (providing that court may grant partial release to allow individual to work, seek employment, engage in self-employment, attend educational institution, receive medical treatment, or "devote time to any other purpose approved by the court"). Absent any indication to the contrary, the Board's interpretation of Section 402.6 of the Law does not clearly undermine the purpose behind granting an individual a partial confinement sentence. We, therefore, reject Claimant's argument that the Board's interpretation also disregards the purpose of a partial confinement sentence.

Last, Claimant contends that the Board's interpretation of Section 402.6 of the Law is not consistent with other sections of the Law. Specifically, Claimant argues that Section 401(d)(1) of the Law,[9] which requires a claimant to be able and available for work to be eligible for benefits, has been interpreted so as to allow claimants who are only partially available for work to be eligible for benefits. Additionally, Claimant explains that a claimant who only receives earnings for part-time work may also be eligible for benefits. Claimant thus contends that in the interest of consistency Section 402.6 of the Law should be construed so as to allow a claimant who is only incarcerated for part of the week to be eligible for benefits.

Claimant's argument concerning consistency involves provisions of the Law that relate to a claimant's eligibility for benefits. *See* Section 401 of the Law (listing qualifications required for claimant to receive benefits); Section 4(g.1) of the Law[10] (establishing credit week as every week in which claimant earned sixteen times the minimum wage). Thus, if a claimant has only limited availability for work or only earns part-time wages, he or she may still be eligible for benefits. *See, e.g.*, *Rohde v. Unemployment Comp. Bd. of Review*, 28 A.3d 237 (Pa. Cmwlth. 2011) (holding that claimant's limited availability did not remove him from labor market and claimant was thus able and available for work). Section 402.6 of the Law, however, is a provision which expressly relates to a claimant's *ineligibility* for benefits. Instead of providing the criteria with which a

---

[9] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1).

[10] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 753(g.1).

claimant must comply in order to be *eligible* for benefits, Section 402.6 of the Law was enacted for the purpose of precluding incarcerated claimants from receiving benefits. It is not inconsistent, therefore, for the Board to interpret Section 402.6 of the Law as prohibiting a claimant from receiving benefits if the claimant has been incarcerated for part of the week. Rather, the Board's interpretation is consistent, because the provisions concerning eligibility permit the Board to find a claimant eligible for benefits when the claimant is only partially available for work, and the provisions concerning ineligibility permit the Board to find a claimant ineligible for benefits when the claimant is incarcerated for only part of the week.

In further support of this reasoning, we note that although a claimant may be eligible for unemployment compensation benefits under Section 401 of the Law, *as amended*, 43 P.S. § 801(d), other provisions of the Law may nevertheless render that claimant *not eligible for benefits as a matter of law*, including Section 402.1 of the Law, added by the Act of July 6, 1977, P.L. 41, *as amended*, 43 P.S. § 802.1,[11] and Section 402.6 of the Law. These statutory provisions, therefore, render a claimant ineligible for benefits as a matter of law without reference to or consideration of his ability or availability to work. Thus, factual circumstances that would go into consideration of whether a claimant is able and available for work, such as the time periods during which a claimant is available

---

[11] Section 402.1 of the Law renders ineligible for benefits a claimant who is otherwise eligible for benefits under Section 401(d) of the Law. Section 402.1 of the Law provides that school employees are ineligible for benefits during the period between successive academic years or terms or during school breaks "if such individual performs such services in the first of such academic years or terms and if there is a reasonable assurance that such individual will perform services in the second of such academic years or terms."

15

for work, are not relevant to ineligibility provisions such as Sections 402.1 and 402.6 of the Law.[12]

Finally, we harmonize our construction of Section 402.6 of the Law with the underlying statutory policy, as reflected in Section 3 of the Law, that being to provide benefits to "persons unemployed through no fault of their own." Section 3 of the Law is aspirational and provides a resource for construing or interpreting the Law. Section 3, however, cannot supersede an express provision of the Law that precludes certain claimants from collecting benefits. Section 402.6 of the Law, in essence, bars incarcerated individuals from receiving benefits, regardless of whether the incarceration led to the claimant's unemployment. In this case, as noted above, the circumstances of Claimant's separation from Employer is not before us. Even if we assume, however, that Claimant's separation and resulting unemployment was not his fault, it is indisputable that Claimant's conduct led to his conviction and incarceration, the latter of which rendered him ineligible under Section 402.6 of the Law. As reasonably interpreted by the agency charged with enforcing it, Section 402.6 of the Law essentially creates a collateral civil consequence to incarceration. We see no conflict between

---

[12] Claimant's argument that the use of the term "during" in Section 402.6 of the Law requires continuity of incarceration throughout the week in order for a claimant to be ineligible for benefits would mean that anytime a claimant is incarcerated for less than 100% of the week, he would not be ineligible for benefits under Section 402.6. Instead, his eligibility would be dependent upon whether, despite his incarceration, he is able and available for work. Thus, Claimant appears to ask us to consider the effect of his weekend incarceration on his eligibility for benefits as if it were merely a question of whether he is able and available for work under Section 401(d) of the Law. Such an approach to an incarcerated claimant's eligibility for benefits would, in effect, render the provisions of Section 402.6 mere surplusage. *See Walker*, 842 A.2d at 400.

a statutory provision that renders a claimant ineligible for benefits due to his own conduct and Section 3 of the Law.[13]

In short, the Board's interpretation of Section 402.6 of the Law is not clearly erroneous, and it is entitled to deference. Claimant's arguments in support of an alternative construction that would render an incarcerated individual ineligible for unemployment benefits only is he is incarcerated throughout the duration of the week (*i.e.*, 24 hours/7 days per week) are not sufficiently compelling to override the deference afforded to the Board. We, therefore, affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

Judge Wojcik dissents.

---

[13] We also do not find the rule of lenity applicable in this case. The rule of lenity provides that ambiguous provisions in a penal statute must be strictly construed against the government. *See McGrath v. Bureau of Prof. and Occupational Affairs*, 146 A.3d 310, 316 (Pa. Cmwlth. 2016) (en banc); *see also* 1 Pa. C.S. § 1928(b)(1) (requiring strict construction of penal provisions of statute). "Penal statutes are statutes that define criminal offenses and specify their corresponding fines and punishment." *Commonwealth v. Stone and Co.*, 788 A.2d 1079, 1082 (Pa. Cmwlth. 2001). Although the rule of lenity is not strictly confined to criminal statutes, *McGrath*, the statute at issue must still be penal in nature in that it (a) defines an offense and (b) imposes a corresponding fine or punishment. Section 402.6 of the Law is a provision that establishes eligibility for a public benefit program (unemployment compensation). It neither defines an offense nor imposes a fine or punishment for an offense. It only purports to exclude a class of potential claimants, those incarcerated, from eligibility for weekly benefits. Accordingly, it is not a penal provision, and the rule of lenity does not apply.

17

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Daniel Harmon,                                    :
                Petitioner         :
                              :
        v.                                          :   No. 787 C.D. 2015
                              :
Unemployment Compensation           :
Board of Review,                              :
                Respondent        :

# **O R D E R**

AND NOW, this 7th day of June, 2017, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Harmon,                          :
               Petitioner              :
                                        :
               v.                      : No. 787 C.D. 2015
                                          : Argued: March 8, 2017
Unemployment Compensation               :
Board of Review,                        :
               Respondent              :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE JOSEPH M. COSGOVE, Judge

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: June 7, 2017

The majority has carefully parsed the words of Section 402.6 of the Unemployment Compensation Law (Law)[1] and concluded that its directive on the eligibility of incarcerated persons for unemployment compensation is ambiguous. I agree with that conclusion. I part company with the majority in its decision to resolve the ambiguity against Daniel Harmon (Claimant), who is subject only to partial confinement and available to work Monday through Friday. Because the Law is remedial in nature, ambiguities therein should be resolved in favor of coverage. Accordingly, I respectfully dissent.

The majority acknowledges, correctly, the remedial nature of the Law. It quotes, with approval, this Court's recitation that the "purpose of the Law is to

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, added by the Act of October 30, 1996, P.L. 738, *as amended*, 43 P.S. §802.6.

be remedial and broadly construed so that employees who become unemployed through no fault of their own are provided with some semblance of economic security." *Darby Township v. Unemployment Compensation Board of Review*, 429 A.2d 1223, 1227 (Pa. Cmwlth. 1981). The majority also acknowledges that statutory disqualification provisions "should be narrowly construed and a claimant must not be denied compensation unless he is unequivocally excluded by the plain language of these provisions." *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). Our task is to apply these principles to Section 402.6 of the Law, which states as follows:

> An employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment *during which the employe is incarcerated* after a conviction.

43 P.S. §802.6(a) (emphasis added).

Prior to the 1996 enactment of Section 402.6, incarcerated inmates on work release were able to collect unemployment compensation. *See Greer v. Unemployment Compensation Board of Review*, 392 A.2d 918 (Pa. Cmwlth. 1978). In *Chamberlain v. Unemployment Compensation Board of Review*, 114 A.3d 385, 396 (Pa. 2015), our Supreme Court observed "that Section 402.6 was enacted to change the law originally established by the Commonwealth Court's decision in *Greer* by precluding unemployment compensation benefits to those claimants who are incarcerated in prison and eligible for work release."[2] The question here is the

---

[2] In doing so, the Supreme Court relied on the comments of Representative William Lloyd, the proponent of the legislation, who stated:

> Mr. Speaker, this amendment would put into the Unemployment Compensation Law a prohibition which is similar to one which we inserted into the workers' compensation law in 1993. Specifically, this amendment says that someone who is incarcerated after a conviction does not receive unemployment benefits.

**(Footnote continued on the next page . . .)**

MHL-2

meaning of the phrase "any weeks of unemployment *during which* the employe is incarcerated...." 43 P.S. §802.6 (emphasis added). Does "during" mean throughout the week of unemployment or does it mean a single point of time within that week?

The word "during" is defined two ways. It means (1) "throughout the duration of," and (2) "at a point in the course of." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 360 (10th ed. 1997). Because "during" has two reasonable meanings, Section 402.6 is ambiguous. The majority chooses the second dictionary definition of "during," but I would choose the first definition. This broader definition is more appropriate given our duty to give a broad construction to the Law's remedial program and a narrow construction to a disqualification from that program.

The sentencing court ordered Claimant to serve his 60-day sentence on weekends so that he could keep his job. Under the first dictionary definition of "during," Claimant is not incarcerated "throughout the duration of" the week. He is not, therefore, automatically disqualified. Indeed, he is able to work Monday through Friday, 9:00 a.m. to 5:00 p.m., a typical work week. To deny him compensation because he spends weekends in prison is punitive and not consistent with the remedial purpose of the Law.

---

**(continued . . .)**

> I learned to my surprise a month or so ago from a business in my district that it is possible now, if you are convicted and *you are in prison and you qualify for work release* and your employer does not want you back, *you then get unemployment compensation*. This businessman in my district and the other employees in that company do not think that is right; *I do not think that is right either, and I think we ought to change the law*.

*Id.* (citing 1996 Pa. Legis. J., House, p. 835 (May 13, 1996)) (emphasis added).

MHL-3

The General Assembly has directed that when the words of a statute "are not explicit," we may ascertain legislative intent by considering a number of factors. 1 Pa. C.S. §1921(c).[3] One factor, of the eight, is "administrative interpretations." 1 Pa. C.S. §1921(c)(8). "[A]lthough courts often defer to an agency's interpretation of the statutes it administers, where ... the meaning of the statute is a question of law for the court, [and the court is] convinced that the agency's interpretation is unwise or erroneous, that deference is unwarranted." *Rosen v. Bureau of Professional and Occupational Affairs, State Architects Licensure Board*, 763 A.2d 962, 968 (Pa. Cmwlth. 2000). Such is the case here.

In explaining its holding, the Board stated as follows:

> *Section 402.6 of the Law states that a claimant is disqualified for any weeks in which he is incarcerated after conviction.* The record is clear that the claimant spent a portion of each of the weeks at issue confined to the Philadelphia County prison system. *Although he was able to work part of those weeks in a work release program, this does not change the fact that he was incarcerated during those weeks; and the Section 402.6 disqualification still applied.* See *Kroh v. UCBR*, 711 A.2d

---

[3] Section 1921(c) states:

When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

  (1) The occasion and necessity for the statute.

  (2) The circumstances under which it was enacted.

  (3) The mischief to be remedied.

  (4) The object to be attained.

  (5) The former law, if any, including other statutes upon the same or similar subjects.

  (6) The consequences of a particular interpretation.

  (7) The contemporaneous legislative history.

  (8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921(c).

> 1093 (Pa. Cmwlth. 1998)(affirming the Board's denial of benefits to a claimant under Section 402.6 during weeks that he was eligible for work release). The *Kroh* holding was unaffected by the recent opinion of *Chamberlain v. UCBR*, 83 A.3d 282 (Pa. Cmwlth. 2014), so denial of benefits is required for an incarcerated claimant who is able and available for work release.

Board Adjudication, 4/15/2015, at 1 (emphasis added). The Board did not address the meaning of the word "during." Rather, it focused solely on the word "incarcerated." Because the Board did not address the ambiguity in Section 402.6, it is impossible to give its holding any deference.

The other problem with the Board's rationale is that it rests upon the erroneous supposition that Claimant was in a "work release" program. He was not. Claimant was serving a sentence of partial confinement, which is imposed "[w]here the court determines the rehabilitative needs are high and the risk to the public posed by the offender … is sufficiently low." *Commonwealth v. Patton*, 597 A.2d 1216, 1218 (Pa. Super. 1991). From Sunday afternoon at 3:00 p.m. until Friday evening at 5:00 p.m., Claimant is at liberty and able to work. He is not under the confines of any penal institution.

The Statutory Construction Act directs that where the words of the statute are not explicit, we may look, *inter alia*, at the "occasion and necessity for the statute," and the "former law, if any, including other statutes upon the same or similar objects." 1 Pa. C.S. §1921(c)(1), (5). Our Supreme Court has undertaken this exercise. In *Chamberlain*, it held that Section 402.6 was enacted to end the eligibility of inmates on work release for unemployment compensation. This Court has further elaborated that Section 402.6 was enacted to bar prisoners "living at taxpayers' expense to [be able] to receive unemployment compensation just because they were eligible for work release." *Kroh v. Unemployment*

MHL-5

*Compensation Board of Review*, 711 A.2d 1093, 1096 (Pa. Cmwlth. 1998). A person on house arrest does not live at taxpayer expense. Accordingly, the Supreme Court held that Section 402.6 did not disqualify a person on house arrest from receiving unemployment benefits. *Chamberlain*, 114 A.3d at 396.

The majority cites a memorandum opinion, *Gonzalez v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 1825 C.D. 2014, filed August 18, 2015), and suggests that there is no need for a "different result" here. But there is. *Gonzalez* neither acknowledged nor addressed the ambiguity of the word "during" in Section 402.6 of the Law. Rather, *Gonzalez* focused on the plain meaning of the word "incarcerated" and did not mention the word "during."

The Board argues that incarceration at any point in the week, whether for two days or one hour, renders an employee ineligible for unemployment compensation. Under this view, a person arrested for disorderly conduct on Friday night, who spends one night in jail, pleads guilty and gets a sentence for time served, is ineligible for unemployment compensation for the entire week. This outcome is not consistent with the principle that a disqualification provision should be narrowly construed. *Penflex*, 485 A.2d at 365. Notably, "a legislative measure will be considered penal where *... the effect of the statute is so harsh that 'as a matter of degree' it constitutes punishment.*" *Evans v. Pennsylvania Board of Probation and Parole*, 820 A.2d 904, 912 (Pa. Cmwlth. 2003) (emphasis added). A penal provision "shall be strictly construed." 1 Pa. C.S. §1928(b)(1).[4]

---

[4] Had the trial court sentenced him to serve the 60 days consecutively, then Claimant would be eligible for unemployment in two months. The weekend sentence extended his disqualification for more than six months. This is punitive.

MHL-6

Unlike the incarcerated inmate on work release, Claimant does not live at taxpayer expense. Other than his weekend meals from the government, he bears the burden of maintaining a place to live, securing transportation and providing for all the necessities of life. Claimant's weekend incarceration may be his "fault," but his unemployment is not.

Section 3 of the Law, entitled "Declaration of Public Policy," states, in relevant part, as follows:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. *Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance.* Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own.

43 P.S. §752 (emphasis added). The declaration of policy in Section 3 "is to be considered in construing" the Law. *Department of Labor and Industry, Bureau of Unemployment and Unemployment Compensation v. Unemployment Compensation Board of Review*, 24 A.2d 667, 667 (Pa. Super. 1942). Claimant's potential indigency falls "ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance." 43 P.S. §752. To deprive Claimant of unemployment compensation not only punishes him, it also burdens the system by which we provide relief to the indigent. This result is not consistent with the directive in Section 3 on the proper construction of the Law, let alone any remedial statute.

I construe the "weeks of unemployment during which the employe is incarcerated" to mean that an employee is automatically disqualified only where he is incarcerated "throughout the duration of" the week. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 360 (10th ed. 1997). He may still be disqualified if his lesser term of incarceration adversely affects the Law's requirement that he be "able to work and available for suitable work." Section 401(d)(1) of the Law, 43 P.S. §801(d)(1).[5] I would reverse the Board's adjudication and remand the case for further proceedings.

_____
MARY HANNAH LEAVITT, President Judge

Judge Wojcik and Judge Cosgrove join in this dissenting opinion.

---

[5] The availability requirement is not absolute. The Law does *not* require the claimant to "be available for full-time work, for permanent work, for his most recent work, or for his customary job, so long as the claimant is ready, willing and able to accept some suitable work." *Rohde v. Unemployment Compensation Board of Review*, 28 A.3d 237, 243 (Pa. Cmwlth. 2011).

MHL-8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Harmon,                                      :
                            Petitioner             :
                                                    :
            v.                                      :
                                                    :
Unemployment Compensation                           :
Board of Review,                                    :        No. 787 C.D. 2015
                            Respondent             :        Argued:  March 8, 2017


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE COSGROVE                          FILED:  June 7, 2017


        I join the thoughtful dissent of President Judge Leavitt in its entirety.
I write separately to emphasize several additional points.

        In fulfilling our duty to discern the intent of the General Assembly
whenever statutory interpretation is part of our decision making, we are not limited
to examination of the particular provision before us but must instead view the
entire body of legislation as an organic whole.  We, indeed, are compelled to do so.
President Judge Leavitt carefully outlines how the Majority mistakenly limits the
interpretation of Section 402.6 of the Unemployment Compensation Law (Law).[1]
In doing so, the Majority contradicts the Law's "remedial and humanitarian []
purpose … [thus] frustrat[ing its objectives] by slavish adherence to technical and

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, added by the Act of
October 30, 1996, P.L. 738, *as amended*, 43 P.S. §802.6.

artificial rules." *Lehr v. Unemployment Compensation Board of Review*, 625 A.2d 173, 175 (Pa. Cmwlth. 1993)(internal citations omitted). We would be wise therefore to embrace the President Judge's analysis, and rest there. Suspecting the Majority will not accept this invitation, there is additional reason to rethink what it proposes.

Although this case is before us in the unemployment benefit context, what is really at its core is the sentencing decision of a trial judge. While criminal law and its processes do not fit neatly into this Court's wheelhouse, we cannot ignore the profound experience a judge has in sentencing another. In fact, in no other area of the law is a judge's decision more consequential and impactful to the party before him or her. "If the hundreds of American judges who sit on criminal cases were polled as to what was the most trying facet of their jobs, the vast majority would almost certainly answer 'Sentencing.' In no other judicial function is the judge more alone; no other act of his [or hers] carries greater potentialities for good or evil than the determination of how society will treat its transgressors." *See* Judge Irving R. Kaufman, Sentencing: The Judge's Problem, Atlantic Monthly, January 1960, available at http://www.theatlantic.com/past/docs/unbound/flashbks/death/kaufman.htm, (last viewed May 19, 2017).

The General Assembly guides the sentencing decision and directs the judge to consider, among other things, "the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). These considerations are applied to the array of alternatives outlined by statute, which include the possibility of a sentence of partial confinement such as that imposed on Daniel Harmon (Claimant) pursuant to 42 Pa. C.S. § 9721(a)(3). As the President Judge rightly notes, this sentence allowed Claimant to serve time in a manner which provided him with complete liberty to

JMC-2

remain employed during the normal workweek. Particularly tailored to Claimant, this sentence fulfills the statutory purpose of addressing his rehabilitative needs. Although circumstances cost him employment through no fault of his, receipt of unemployment benefits nonetheless would have supported Claimant's rehabilitation given the requirement in Section 401(b)(1) of the Law that benefits must accompany supervised efforts to seek employment.[2] By construing Section 402.6 as it does, the Majority interferes with this rehabilitative effort in a way the legislature cannot have intended.

Whatever the motivation behind the enactment of Section 402.6,[3] it would be the epitome of illogic for the General Assembly to construct a mechanism for courts to fashion a rehabilitative remedy for transgressors with one statute, only to have that remedy eviscerated through exercise of another statute, particularly when the latter has only a "humane" and "remedial" purpose.

For these reasons, as well as those articulated by the President Judge, I am compelled to dissent.

_____
JOSEPH M. COSGROVE, Judge

President Judge Leavitt and Judge Wojcik join in this dissent.

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(b)(1).

[3] President Judge Leavitt's reference to the legislative sponsor's quote is quite telling. *See Harmon v. Unemployment Comp. Bd. of Review*, (Pa. Cmwlth., No. 787 C.D. 2015, filed June 7, 2017) (Leavitt, P.J., dissenting, slip op. at 2 n.2).

JMC-3